NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BAYONNE MEDICAL CENTER,<br><br>Debtor.<br><br>ALLEN D. WILEN,<br>As the Liquidating Trustee of Bayonne Medical Center,<br><br>Appellant,<br><br>v.<br><br>FORTIS PROPERTY GROUP, L.L.C., LOUIS KESTENBAUM, URBAN/SUBURBAN ASSOCIATES, L.L.C., AND ROBERT MILLER,<br><br>Respondents. | Civil Action No.: 09-6325 (PGS)<br><br>OPINION |

    This matter comes before the Court on an appeal from the U.S. Bankruptcy Court for the District of New Jersey. On September 9, 2009, the Honorable Morris Stern, U.S.B.J., held a hearing on a motion to dismiss adversary complaint filed by respondents, and for the reasons set forth on the record granted the motion to dismiss as to Fortis Property Group L.L.C. and Louis Kestenbaum (the "Fortis Respondents"), and entered an appropriate order dismissing plaintiff's complaint in its entirety against the Fortis Respondents. Appellant, the liquidating trustee of Bayonne Medical Center, (the "Trustee") alleges that the bankruptcy court erred in granting the Fortis Respondents'

1

motion to dismiss. For the reasons set forth below the bankruptcy court's decision is affirmed.

## I       STATEMENT OF FACTS

### The Sale of BMC

On April 16, 2007, Bayonne Medical Center ("BMC") filed for Chapter 11 bankruptcy. On April 15, 2009, the Trustee filed an adversary proceeding against the Fortis Respondents, Mr. Robert Miller, and Urban/Suburban Associates L.L.C. ("Urban") to recover damages for Urban's breach of an Asset Purchase Agreement ("APA") that was intended to facilitate the purchase of BMC (the "Complaint"). Count I of the Complaint alleged that Urban and Miller breached the APA for failure to place the $2.25 million purchase price deposit as required under the APA. Count II alleged that the Fortis Respondents were liable for a breach of the APA as co-venturers with Urban and Miller. The Fortis Respondents moved to dismiss count II of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Fortis Respondents argued, *inter alia*, that §§ 6.9, 12.7, 12.10 and 12.11 of the APA precluded any vicarious liability, and because the Fortis Respondents were not signatories to the APA, BMC could not hold them liable for its breach. The Trustee opposed the motion.

On September 9, 2009, the bankruptcy court heard oral argument on the motion. At the end of the hearing, the court issued an oral opinion granting the Fortis Respondents' motion to dismiss the Complaint ("Opinion"). Thereafter, the Trustee voluntarily dismissed the remaining claims against Mr. Miller, and proceeded only against Urban on count I of the Complaint. The bankruptcy court granted default judgment against Urban as to count I for breach of the APA.

Appellant alleges that in the summer of 2007, Mr. Kestenbaum and Mr. Miller entered a joint venture to acquire and develop waterfront property in Bayonne, New Jersey. According to the

Complaint, Mr. Kestenbaum and Mr. Miller have worked together in the past on several joint ventures and they would always "seal the joint venture with a handshake."[1] The Trustee alleges that Mr. Kestenbaum assigned Fortis Property Group LLC to work with Mr. Miller on devising investment plans for the Bayonne area. According to the Complaint, Mr. Miller then proceeded to do all the "leg work" on the project. This included arranging meetings between Fortis' chief financial officer, Mr. Kobre, and Bayonne city officials, providing a local real estate consultant, Mr. Ward, to advise Fortis, and keeping Mr. Kestenbaum apprised of any progress. Mr. Miller eventually learned that BMC was for sale and discussed it with Mr. Kobre who indicated that Fortis might be interested in acquiring BMC.

According to the Trustee, in August 2006, Mr. Miller, Mr. Kestenbaum, Mr. Kobre, and Mr. Ward met at Fortis headquarters to discuss the BMC deal. Trustee alleges that at this meeting Mr. Kestenbaum instructed Mr. Miller to work with Mr. Kobre to acquire BMC. As a result, Mr. Miller entered into discussion with BMC's investment bank, Cain Bros., regarding the acquisition of BMC. The Appellant alleges that Cain Bros. provided access to BMC financial documents for due diligence purposes upon being informed that Fortis was financing the purchase of BMC. Mr. Miller also arranged several meetings with the City of Bayonne. The end goal was for Fortis to acquire BMC and then sell it to the City of Bayonne, which would then sell BMC to Touro University (the entity that was to operate the facility). Later, the deal was restructured so Urban would purchase BMC (using Fortis funds) for approximately $22 million, and then Urban would sell BMC to a non-profit entity created by the City of Bayonne. Fortis and Urban were to retain adjoining parcels of

---

[1] The Appellant asserts in his brief that since 1998, Mr. Kestebaum and Mr. Miller have worked together on several joint ventures with regard to real estate projects in New Jersey and New York.

land to BMC for development purposes.

### November 1, 2007 Bankruptcy Approval Hearing

On November 1, 2007, the bankruptcy court held a hearing to approve sale of BMC to Urban pursuant to the APA ("Sale Approval Hearing"). While the Sale Approval Hearing was ongoing, Mr. Miller spoke with the president of Fortis, Jonathan Landau, to confirm that Fortis would proceed with the financing. According to Appellant, Fortis agreed to finance the sale with a guarantee from the City of Bayonne that they would purchase the property from Urban. The Trustee alleges that while these discussions were ongoing, Mr. Miller testified before the bankruptcy court that Urban entered into a joint venture with Fortis to purchase the BMC.

The Trustee cites to the following portions of Mr. Miller's testimony at the Sale Approval Hearing for proof of the existence of a joint venture:

> Q: Does Urban Suburban have the deposit that it is contractually obligated to provide under the asset purchase agreement marked D-1?
> A: Yes.
> Q: And where is that deposit located?
> A: It's in Chase Manhattan Bank in Brooklyn, New York.
> Q: And that's in the name of Urban Suburban, the two million two - -
> A: No, sir it's in Fortis Group.
> Q: And what documents entitled Urban Suburban to the money that is currently being held by Fortis?
> A: We have a joint venture agreement.
> Q: And what assurances have you been given that the $2,250~~,00~~ [$2.25] million will be released and paid as a deposit pursuant to the asset purchase agreement?
> A: I've been told that the money will be sent.
> Q: And who told you that?
> A: Fortis Property Group.

(Duranceau Decl. Ex. A, 55: 4-21.) The Appellant also points to the following portion of Miller's tesimony:

> Q: Does Urban Suburban have the financial ability to meet all of its obligations as set forth in the asset purchase agreement identified as D-1?
>
> > A: Yes, through our joint venture program.
> > Q: Excuse me?
> > A: Yes, through our joint venture agreement.
> > Q: Through your joint venture agreement with Fortis.
> > A: Correct.
> > Q: And has Fortis seen the asset purchase agreement?
> > A: Yes.
> > Q: And as far as you know have they agreed to be financially obligated?
> > A: Yes.

(Duranceau Decl. Ex. A, 56:17 - 57:4.) Appellant argues that these statements indicate that Fortis should be bound under the APA. However, Appellant does not refer to other portions of the same transcript where the bankruptcy court specifically addressed the Fortis Respondents' liability under the APA. In its Opinion, the bankruptcy court addressed this fact and cited to its remarks during the Sale Approval Hearing. The court expressly addressed its concern with Fortis' lack of exposure under the APA as written. The bankrupty court stated:

> And just so everyone understands, the fact that the financial wherewithal is there doesn't mean that Fortis is exposed in this transaction because they are not a signatory. We've got a newly formed enterprise and it's an LLC and we all understand what the limitations on liability are. And so you've got $2.25 million and a signature of a newly formed enterprise backed by a very, very substantial financier who has the discretion to fund this or not fund this.

(*Id.* 66: 12-22.) Further, the bankruptcy court instructed BMC's counsel: "So, this is for debtor's counsel in particular. I'm not trying to exclude committee counsel or other counsel in interest to get a guaranty of this deal from Fortis." (*Id.* 70: 1-4.) Moreover, the Court instructed all

5

counsel at the hearing as follows with regard to Fortis and the APA:

> Look, we've all engaged in litigation with LLCs, joint ventures, we understand the liability of one and the other. We understand what agency is and we understand what authority is. And unless someone produces for me a firm fix that Fortis is obligated to that contract . . . I'm going to assume for purposes of this hearing that Fortis is not obligated to that contract.

(*Id.* 71:10-16.) Thus, the bankruptcy court Opinion makes clear that everyone was on notice as of November 1, 2007 that an issue existed regarding the Fortis Respondents' liability because they were not signatories to the APA. The bankruptcy court relies upon the Sale Approval Hearing to demonstrate that "[t]he Asset Purchase Agreement, with its liability limiting provisions, was executed with eyes wide open."

## II. DISCUSSION

### Standard of Review

The factual findings of a bankruptcy court may only be set aside if they are clearly erroneous, and legal conclusions of a bankruptcy court are reviewed *de novo*. *In re Congoleum Corp.*, 414 B.R. 44, 55 (D.N.J. 2009) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222-23 (3d Cir. 1989)). On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S.Ct. at 1950.

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint," including any "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck*, 452 F.3d at 260 (citing 5B Charles A. Wright & Arthur R. Miller, Federal Prac. & Procedure § 1357 (3d ed.2004)).

### The Bankruptcy Court's Decision

The bankruptcy court granted the Fortis Respondents' motion to dismiss the complaint. The court ruled that "[f]undamentally, the Asset Purchase Agreement, APA, serves as a bar to waiver of and exculpation for any possible vicarious liability of Fortis or Kestenbaum as alleged joint venturers of the Asset Purchase Agreement signatory, that is Urban Suburban Associates, LLC." For the reasons below the bankruptcy court's ruling is affirmed.

The bankruptcy court determined that several provisions of the APA expressly exculpated the Fortis Respondents. The court ruled that the language was "thoroughly unambiguous, clear on its face, and its intent requires no further investigation or elaboration." The bankruptcy court focused on section 12.11 of the APA, "No Personal Liability," which provides:

> In entering into this Agreement, the parties understand, agree and

> acknowledge that no director, trustee, officer, manager, member, employee, shareholder, attorney, accountant, advisor or agent of any party hereto shall be personally liable or responsible to any other party or its Affiliates, directors, trustees, officers, managers, members, employees, shareholders, attorneys, accountants, advisors or agents for the performance of any obligation under this Agreement of any party to this Agreement or the truth, completeness or accuracy of any representation or warranty contained in, or statement made in, this Agreement or any document prepared pursuant hereto and that ***all obligations hereunder are those of the named parties only (but nothing contained herein shall limit the liability of any person for his or her fraudulent acts)***.

(emphasis added). The bankruptcy court emphasized the last sentence of section 12.11 in its ruling. It held that it was unambiguous and expressly limited any vicarious liability for the Fortis Respondents except for fraudulent acts, and no fraud was alleged in the complaint. The bankruptcy court determined that in reviewing the entirety of the APA, this limiting provision was consistent with the remainder of the contract. The court held that provisions 6.9, 12.7, and 12.10 all supported the plain understanding of 12.11. These provisions are laid out below:

Section 6.9 provides in pertinent part: "Except for the representations and warranties contained in Article VI (as modified by the Schedules hereto), neither Purchaser nor any other Person makes any other express or implied representation or warranty with respect to the Purchaser or the transactions contemplated by this Agreement." Section 12.7 provides that: "[t]his Agreement (including the schedules and exhibits hereto) and the Escrow Agreement represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof." Additionally, Section 12.10 provides that "Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below. No assignment of this Agreement or of any rights or obligations hereunder may

be made by any party (by operation of law or otherwise) without the prior written consent of Purchaser and Seller and any attempted assignment without the required consents shall be void."

The bankruptcy court determined that these terms "when included in complex agreements covering risky purchases, are, as has been characterized a number of times by the plaintiff, boilerplate, but they're boilerplate, that is they're unusually, if not always, there for good reason, and understandable commercial purposes. And in this case the context was a very hastily put together purchase agreement for a near moribund hospital, and that the liability limiting provisions were, of course, expected and unexceptional."

The court ultimately held that the APA was a clear, unambiguous contract that exculpated the Fortis Respondents because they were not signatories to the APA. Moreover, the court addressed Appellant's contentions that the Sale Approval Hearing somehow established liability on the Fortis Respondents. As noted above, the bankruptcy court made clear that at the Sale Approval Hearing all parties were on notice that the APA as written did not extend liability to the Fortis Respondents. Appellant's attempt to introduce any ambiguity in the Sale Approval Hearing though the later filed adversary complaint was comprehensively addressed and dismissed by the bankruptcy court.

Whether a contract is ambiguous is a question of law and therefore the Court applies a *de novo* standard of review. *Princeton Ins. Co. v. Converium Reinsurance (North America) Inc.*, 344 F. App'x 759, 761-62 (3d Cir. 2009) (citing *Grow Co. v. Chokshi*, 403 N.J.Super. 443, 959 A.2d 252, 272 (App. Div. 2008). "Only if a court determines that a contract provision is ambiguous-that is, that it is subject to at least two reasonable interpretations-should the issue be left to a jury." *Id.* (citing *Bedrock Founds., Inc. v. George H. Brewster & Son, Inc.*, 31 N.J. 124, 155 A.2d 536, 541 (1959)).

Pursuant to New Jersey law, "we must interpret the parties' contract according to its plain language." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 255 (3d Cir. 2010) (citing *State Troopers Fraternal Ass'n of N.J. v. State*, 149 N.J. 38, 692 A.2d 519, 523 (1997). The court should "read the document as a whole in a fair and common sense manner." *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 965 A.2d 1165, 1169 (2009) (citation omitted). Under New Jersey law a court may consider extrinsic facts but "'only for the purpose of interpreting the writing-not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said.'" *Princeton Ins. Co.*, 344 F. App'x at 761-62 (citing *Atl. N. Airlines v. Schwimmer*, 12 N.J. 293, 96 A.2d 652, 656 (1953)).

The Court agrees with the bankruptcy court's finding that the APA was an unambiguous contract that should be interpreted by its plain meaning. The contract contains several exculpatory clauses that would apply to the Fortis Respondents. At the Sale Approval Hearing this issue was discussed at length, and the bankruptcy court cautioned all counsel involved that the APA, as written, did not expose the Fortis Respondents to liability. He suggested that if Appellant wished to extend liability to the Fortis Respondents then the APA should be amended. Appellant's attempt to introduce extrinsic evidence demonstrating otherwise is unpersuasive. This Court agrees that the APA "was executed with eyes wide open," and that the APA does not extend liability to parties that are not signatories to the contract. The Court only considers the Sale Approval Hearing in the context of aiding interpretation of the terms in the APA.

Appellant's principle argument is that the Fortis Respondents are liable under the APA as a result of an alleged joint venture agreement that was entered into orally with Urban. It is not clear that any joint venture agreement existed. Regardless, in its Opinion, the bankruptcy court entertained

a hypothetical where it assumed *arguendo* that the Fortis Respondents had actually entered into a written, join venture agreement to purchase BMC. Assuming the actual existence of a joint-venture agreement, the parties then formed a separate limited liability company with the express purpose of purchasing the BMC. The bankruptcy court held that even in that hypothetical circumstance, section 12.11 of the APA, which excludes liability of any entities other than the named parties, would bar any liability. Thus, Appellant's main argument that the Fortis Respondents should be liable under the APA because there existed an oral agreement to enter into a joint-venture cannot prevail. It does not affect the Court's determination that the APA clearly and in plain language exculpates non-signatory parties, except in cases involving fraud.

Moreover, the bankruptcy court noted that "bankruptcy policy and practice really requires that these exculpatory and limiting provisions be honored in most cases." The court stated that if these provisions are unambiguous (as they are here), then "they have to be honored in order to attract parties into risky transactions" in "short period of time" as is the case in bankruptcy proceedings. This Courts agrees with the bankruptcy court that if it were "to ignore plain exculpatory provisions" it may "chill the bankruptcy asset sale marketplace," which would not be a favorable bankruptcy or commercial policy.

III.   CONCLUSION

For the foregoing reasons the bankruptcy court's decision is affirmed and Appellant's appeal is denied.

July 30, 2010

*[signature]*

PETER G. SHERIDAN, U.S.D.J.

11